IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BRADLEY K. HUTSON,

               Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
the Social Security Administration,

               Defendant.

4:19-CV-3117

MEMORANDUM AND ORDER

The plaintiff, Bradley K. Hutson, filed his complaint (filing 1) seeking judicial review of the Commissioner's denial of his applications for disability insurance benefits (filing 12-2 at 9-11) under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and moved this Court for an order reversing the Commissioner's final decision that he was not disabled (filing 18). The Commissioner filed an answer to the complaint (filing 11), and a motion to affirm the agency's final decision (filing 20). The Court finds that the Commissioner's decision is not supported by substantial evidence on the record, that the plaintiff's motion to reverse should be granted, and that the Commissioner's motion to affirm should be denied.

## I. FACTUAL BACKGROUND

### 1. MEDICAL AND WORK HISTORY

The plaintiff, and his older brother and sister, were abandoned by their birth parents when the plaintiff was two. He went through two foster home placements before he was adopted. *Id.* The plaintiff is now a divorced father of two sons, the youngest of which is nearing age eighteen. Filing 12-5 at 4. The plaintiff grew up and lived the majority of his life in south-central Illinois.

During the period when his application for disability benefits was being processed, the plaintiff connected with his biological brother, and began living in his brother's home in Fremont, Nebraska. Filing 13-9 at 36. The plaintiff has worked as a truck driver, as a laborer buffing recapped truck tires, washing and detailing automobiles, at a convenience store as a clerk, for temporary agencies doing a variety of labor tasks, and as an aide in a facility for mentally and physically disabled individuals. Filing 12-2 at 64-70.

The plaintiff has a long history of alcohol use and abuse. Now in his early 40s, the plaintiff reported that he began drinking alcohol when he was twelve. Filing 13-9 at 36. The plaintiff told his medical providers that he drank as much as thirty beers and two fifths of vodka in a day. Filing 13-2 at 3. He has three driving-under-the-influence convictions, and his driving privileges have been suspended since 2014. Filing 13-9 at 36. In June 2017, the plaintiff reported that he had completed a thirty-day alcohol treatment program. Filing 13-5 at 55. The medical records indicate that the plaintiff relapsed in early July, which resulted in a suicide gesture and hospitalization. Filing 13-5 at 8-9. However, since mid-July 2017, the plaintiff claims to have maintained his sobriety. Filing 13-9 at 51. Nothing in the administrative record contradicts the plaintiff's sobriety claim.

The plaintiff's medical treatment records list diagnoses of major depressive disorder, anxiety disorder, unspecified personality disorder, chronic obstructive pulmonary disease (COPD), degenerative lumbar disc disease, obstructive sleep apnea, hypertension, diabetes mellitus, and obesity. Beginning in December 2016 and running through July 2017, the plaintiff was hospitalized on several occasions due to suicide attempts and suicide gestures, all of which were attributed to alcohol intoxication and his severe major depressive disorder. The plaintiff has filed two previous applications for social

security disability benefits (filing 13-9 at 28), the last of which was denied on December 2, 2015 (filing 12-6 at 2). His current claim for disability benefits was filed on April 12, 2017. Filing 12-5 at 2-6.

## 2. ADMINISTRATIVE HEARING

A hearing before an Administrative Law Judge (ALJ) was held on December 13, 2018, in which the plaintiff and a vocational expert were the only witnesses. Filing 12-2 at 58-84. The ALJ asked the plaintiff about the extent of his education, and the plaintiff responded that he had some college. Filing 12-2 at 64. The plaintiff testified that he is divorced, and currently lives with his brother, his brother's wife and their four children. He looks after the children when his brother and his wife go out for an evening, but otherwise he can't really help out with other chores around the house because of his condition. *Id.*; filing 12-2 at 75-76.

The last time the plaintiff worked was one day in January 2017. In that job, he provided personal care services to mentally challenged individuals in a care facility, and had been in that job for about a year. Filing 12-2 at 64-65. However, that job ended when the plaintiff was hospitalized for an overdose. After he got out of the hospital, he worked for one day and decided he just couldn't handle it. Filing 12-2 at 65. The plaintiff hasn't looked for work since his care facility job ended because he can't sit or stand. When he sits too long, he starts hurting and has to stand, but then standing starts to hurt and he has to lie down. Filing 12-2 at 73. The plaintiff also described working at a convenience store, as a temporary laborer assigned to work in a candy/cake factory, having a commercial driver's license and driving a semi tractor-trailer, recapping truck tires, and detailing automobiles at a dealership.

The ALJ asked the plaintiff about his sobriety. The plaintiff said he hasn't "touched a drop" after getting out of the hospital the last time, and that this month (December 2018) he will have been sober for eighteen straight months. Filing 12-2 at 70-71. The plaintiff said that the current issue keeping him from working has been that he can't walk very far without experiencing a shortness of breath. Filing 12-2 at 71. The plaintiff said that he doesn't like to read, but watches television. Filing 12-2 at 74. He has to constantly readjust his position while watching television because of back pain. He also has trouble focusing and remembering what happened in the show or movie he just watched. He sees a mental health counselor about every two weeks, and sees a psychiatrist every three months. Filing 12-2 at 75. The plaintiff said he takes medications for depression and anxiety, and uses an inhaler for his breathing problems.

The vocational expert was asked if he was able to classify the plaintiff's past work, which he said he could, and was then asked to consider the following hypothetical.

> If you could assume a hypothetical individual the same age, education, and past work as the claimant with the residual functional capacity to perform work at the sedentary exertional level, except he can only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can only frequently balance. He must avoid more than occasional exposure to respiratory irritants, such as fumes, gases, and industrial chemicals. He must avoid hazards—exposure to hazards, such as high, exposed places and moving mechanical parts. In terms of mental limitations, he can understand, remember, and carry out simple instructions. He [can] sustain

4

concentration and persist at simple tasks for two hours at a time, with normal breaks, for eight hours. And he can have frequent, but not constant, interactions with the general public, as long as those interactions are brief and superficial.

Filing 12-2 at 81-82.

The ALJ asked the vocational expert whether this hypothetical individual could perform the plaintiff's past work, and the vocational expert said no. He was then asked if, in his professional opinion, there would be other work in the national economy for this hypothetical individual. The vocational expert said yes, at the unskilled, sedentary level, and identified three specific examples: (1) document preparer, DOT 249. 587-018; (2) polisher of eye frames, DOT 713.684-038; and, (3) call-out operator, DOT 237.367-014. Filing 12-2 at 82. The vocational expert next responded to the ALJ's question about employer tolerance for an employee being off task. Finally, the ALJ asked the expert if his testimony was consistent with the information found in the Dictionary of Occupational Titles (DOT). The expert said yes, with the exception of his opinion on being off task, which was based on his forty-five years of professional experience. Filing 12-2 at 83.

### 3. ALJ'S FINDINGS AND CONCLUSIONS

On April 8, 2019, the ALJ issued an unfavorable decision, finding that the plaintiff was not disabled. Filing 12-2 at 9-26. To determine whether a claimant qualifies for disability benefits, an ALJ performs a five-step sequential analysis of the claim. 20 C.F.R. § 404.1520(a)(4). Regarding step one, the ALJ found that the plaintiff met the insured status requirement of the Social Security Act and that the plaintiff had not engaged in substantial

gainful activity since the plaintiff's alleged onset date, January 2, 2017. Filing 12-2 at 15.

At step two, the medical severity of the claimant's impairment is considered. 20 C.F.R. § 404.1520(a)(4)(ii). The claimant has the burden to prove a medically determinable physical or mental impairment, or combination of impairments, that significantly limits the physical or mental ability to perform basic work activity. *Gonzales v. Barnhart,* 465 F.3d 890, 894 (8th Cir. 2006). The ALJ found the following severe impairments: depression, anxiety, personality disorder, alcoholism, obesity, chronic obstructive pulmonary disease, degenerative disc disease, and obstructive sleep apnea. Filing 12-2 at 15. The ALJ concluded that these impairments imposed more than minimal limitations on the plaintiff's capacity to perform basic work. *Id.* The ALJ also found non-severe impairments of hypertension and diabetes mellitus, but concluded that these impairments have no more than a minimal effect on the plaintiff's capacity to work. *Id.*

At step three, the medical severity of the claimant's impairments is considered. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments meet or equal a presumptively disabling impairment listed in the regulations, the analysis ends, and the claimant is automatically found disabled and entitled to benefits. *Gonzales,* 465 F.3d at 894. The ALJ concluded that prior to July 1, 2017, the plaintiff's impairments met or medically equaled listing 12.04 (depressive, bipolar and related disorders). Filing 12-2 at 15-16. The ALJ found that the plaintiff's longstanding problems with alcohol abuse, depression, and anxiety resulted in symptoms that included extreme feelings of sadness and hopelessness, low self-esteem, feelings of guilt and shame, social isolation, loss of motivation and interest, appetite and sleep disturbances, tiredness, and suicidal thoughts. The plaintiff's disorders produced marked limitations in

6

understanding, remembering, or in applying information, and in concentrating, persisting, or maintaining pace.

When an ALJ finds a claimant disabled, and evidence of substance abuse is included in the determination, the ALJ must then determine whether the substance abuse problem is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535. In other words, the ALJ must determine whether the disability would still exist in the absence of substance abuse, which could present a difficult hypothetical question if the claimant's drug or alcohol abuse was continuing. *Kluesner v. Astrue,* 607 F.3d 533, 537 (8th Cir. 2010).

Here, although substantial evidence indicates that the plaintiff's alcohol abuse stopped or was no longer a contributing factor material to the determination after July 1, 2017, the ALJ still framed the issue as a hypothetical. The ALJ found that if the plaintiff had stopped his substance use, the plaintiff would continue to have severe impairments or a combination of impairments, but that his impairments or combination of impairments failed to meet or medically equal any of the impairment listings. Filing 12-2 at 17. The ALJ concluded, when the plaintiff's substance abuse is factored out, he had: (1) mild limitations in understanding, remembering, or applying information; (2) mild limitations in interacting with others; (3) moderate limitations in concentrating, persisting, or maintaining pace; and, (4) mild limitations in adapting or managing oneself. Filing 12-2 at 18.

At step four, a claimant has the burden to prove the lack of a residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *Gonzales,* 465 F.3d at 894. The ALJ identified that the plaintiff would have the residual functional capacity to perform sedentary work, except:

[H]e would have been limited to occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling, frequent balancing, and no climbing of ladders, ropes or scaffolds. The claimant would have needed to avoid more than occasional exposure to respiratory irritants such as fumes, gases, and industrial chemicals. He would have needed to avoid exposure to hazards such as high, exposed places, and moving mechanical parts. The claimant would have been able to understand, remember, and carry out simple instructions, sustain concentration and persist at simple tasks for 2 hours at a time with normal breaks for an 8-hour workday, and frequently but not constantly interact with the public as long as such interactions were brief and superficial.

Filing 12-2 at 19.

The ALJ reported that the evidence as a whole supports her residual functional capacity determination from the onset date until July 1, 2017, in the absence of substance abuse, and for the period beginning July 1, 2017, even when considering substance abuse. Filing 12-2 at 24. The ALJ's residual functional capacity determination was, in substance, the same as the hypothetical she posed to the vocational expert at the hearing. Thus, relying on the vocational expert's hearing testimony regarding a hypothetical individual with the same residual functional capacity as the plaintiff, the ALJ concluded that the plaintiff was unable to return to any of his past relevant work. Filing 12-2 at 24.

At step five, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform considering the claimant's residual functional capacity, age, education, and

work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Gonzales*, 465 F.3d at 894. The ALJ determined that based on his age, education, work experience and residual functional capacity, the plaintiff would be able to perform the requirements of "representative unskilled, sedentary occupations," and specifically cited the three occupations identified by the vocational expert; (1) document preparer, DOT # 249.587-018, (2) polisher of eye frames, DOT # 713.684-038, and (3) callout operator, DOT # 237.367-014. Filing 12-2 at 25.

The ALJ stated that the vocational expert's hearing testimony was "consistent with the information contained in the Dictionary of Occupational Titles (DOT)." Filing 12-2 at 26. The ALJ also stated that she reviewed the relevant information contained in the DOT and that there was "no apparent conflict with the vocational expert's testimony." *Id.*

On April 30, 2019, the plaintiff notified the Appeals Counsel that he was requesting review of the ALJ's unfavorable decision. Filing 12-2 at 7. On October 30, 2019, the Appeals Counsel denied the plaintiff's request for review. Filing 12-2 at 2-8. The ALJ's April 8, 2019, decision is now the final administrative order.

## II. STANDARD OF REVIEW

This Court reviews "the ALJ's decision to deny disability insurance benefits de novo on the record to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." *Combs v. Berryhill*, 878 F.3d 642, 645-46 (8th Cir. 2017). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Id.* The Court considers "the record as a whole, reviewing both the evidence that supports the ALJ's decision and the evidence that detracts from it." *Id.* The Court will not reverse an administrative decision simply because some evidence may support the

opposite conclusion. *Perkins v. Astrue,* 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. *Id.* The Court defers to the ALJ's determinations regarding credibility so long as such determinations are supported by good reasons and substantial evidence. *Boettcher v. Astrue,* 652 F.3d 860, 863 (8th Cir. 2011).

## III. DISCUSSION

The plaintiff's motion presents one very narrow issue: Does substantial evidence support the ALJ's finding that the plaintiff can perform jobs in the national economy? Filing 19 at 9. The plaintiff argues that there is an apparent, unresolved conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. As such, the ALJ's reliance on the vocational expert's testimony regarding the kinds of jobs in the national economy that are consistent with the plaintiff's residual functional capacity, and the number of those jobs existing in the national economy, is not supported by substantial evidence. The Court agrees.

A disability determination is not an adversarial process, and the ALJ has a duty to fully and fairly develop the record supporting her determination. *Noerper v. Saul*, No. 18-3418, slip op. at 1314 (8th Cir. Jul. 8, 2020); *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004). The ALJ has an affirmative duty to ask about any possible conflict between the vocational expert's testimony and the DOT regarding the requirements of a job before relying on the vocational expert's opinion to deny a claim. *Kemp ex rel. Kemp v. Colvin,* 743 F.3d 630, 632 (8th Cir. 2014). If there is an apparent conflict between a vocational expert's testimony and the DOT, the ALJ must resolve it by eliciting a reasonable explanation for the conflict, and determine whether the

explanation provides a basis for relying on the vocational expert's opinion rather than on the DOT. *Moore v. Colvin,* 769 F.3d 987 (8th Cir. 2014). If the conflict is not resolved, the vocational expert's testimony does not constitute substantial evidence supporting a denial of benefits. *Stanton v. Comm'r, Soc. Sec. Admin.,* 899 F.3d 555, 558 (8th Cir. 2018).

Here, the ALJ's residual functional capacity finding, which was identical in pertinent part to the hypothetical she posed to the vocational expert at the hearing, found that the plaintiff could only "understand, remember, and carry out simple instructions, sustain concentration and persist at simple tasks for 2 hours at a time with normal breaks for an 8-hour workday." Filing 12-2 at 19. In responding to the ALJ's inquiry about available jobs in the national economy, the vocational expert gave an answer that is both internally contradictory, and in conflict with the ALJ's hypothetical. The vocational expert opined that the other work available for the plaintiff would be "at the unskilled, sedentary level," and identified three specific DOT-listed occupations, two of which were coded at reasoning level 3, and one at reasoning level 2.

The occupations listed in the DOT identify and classify vocational components, such as strength, general education development, and specific vocational preparation (*see e.g.* Dictionary of Occupational Titles 713.684-038, 1991 WL 679267 (2016)), that are deemed to be the approximate maximum requirements for performance of the listed occupation. *Jones v. Chater,* 72 F.3d 81, 82 (8th Cir. 1995). The general educational development component (GED Scale) "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 (2016). The GED Scale has three divisions; reasoning development, mathematical development, and

language development. *Id.* Each occupation listed in the DOT is coded with a reasoning development level, which corresponds to the ability to follow instructions and the problem-solving skills required for satisfactory job performance. *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010).

The reasoning development levels of the occupations identified by the vocational expert are inconsistent with the ALJ's residual functional capacity determination that the plaintiff could only understand, remember, and carry out simple instructions, and sustain concentration and persist at simple tasks. Further, the reasoning development levels of the occupations are also inconsistent with the definition of unskilled work found in the regulations.

The eyeglass frames polisher occupation identified by the vocational expert is coded at reasoning level 2. Reasoning level 2 work involves applying "commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" and deal with "problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, 713.684-038, 1991 WL 679267 (2016). The two other jobs identified by the vocational expert (document preparer and call-out operator) are coded at reasoning level 3—a more demanding reasoning level—which is defined as work that involves applying "commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form" and dealing with problems involving several concrete variables in or from standardized situations." *See, e.g.* Dictionary of Occupational Titles, 249.587-018, 1991 WL 672349 (2016).

In contrast, jobs at reasoning level 1 involve applying "commonsense understanding to carry out *simple one-or-two step instructions*" and deal with "standardized situations with occasional or no variables in or from these situations encountered on the job." Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 (2016). Further, reasoning level 1 occupations are

12

consistent with unskilled work as defined in the regulations. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

There is an apparent conflict in the vocational expert's testimony when he opined that the plaintiff was suited for unskilled, sedentary work—which would limit the plaintiff to work requiring little or no judgment to do *simple* tasks—but identified available occupations that would require the plaintiff have the capacity to carry out *detailed* but uninvolved written or oral instructions. Similarly, the ALJ's residual functional capacity determination limiting the plaintiff to jobs that only required him to understand, remember, and carry out *simple instructions*, and sustain concentration and persist at *simple tasks*, is inconsistent with an occupation that requires the capacity to carry out *detailed* but uninvolved written or oral instructions.

Unskilled work, as well as the plaintiff's residual functional capacity limiting him to jobs with simple instructions and simple tasks, is more akin to the requirements of reasoning level 1—having the capacity to apply commonsense understanding to carry out *simple one-or-two step instructions*. "Only occupations with a reasoning development level of one necessarily involve only simple instructions." *Hulsey*, 622 F.3d at 923.

Such conflicts, if not resolved, are generally held to be reversible error. For instance, in *Lucy v. Chater*, the ALJ's decision was not supported by substantial evidence when the claimant had the capacity to follow simple directions, but the range of occupations the ALJ considered suitable included occupations coded at reasoning level 2. 113 F.3d 905, 909 (8th Cir. 1997). In *Stanton*, 899 F.3d at 558-59, an apparent conflict was found when the ALJ determined that the plaintiff was limited to the ability to understand, retain, and carry out simple one-or-two-step instructions, but then concluded that the

13

plaintiff could perform reasoning level 2 occupations. Similarly, in *Thomas v. Berryhill*, 881 F.3d 672, 676-77 (8th Cir. 2018), an apparent conflict arose when the ALJ determined that the plaintiff was limited to unskilled sedentary work and tasks with the complexity of rote one or two steps that involved little or no judgment, but then relied on the vocational expert's opinion that the plaintiff had the capacity for a reasoning level 3 occupation. Finally, in *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019), an apparent conflict existed when the ALJ limited the plaintiff to carrying out short, simple instructions, but then found the plaintiff suitable for occupations at reasoning level 2, which required employees to carry out detailed but uninvolved written or oral instructions.

Here, the Court finds that there is an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. The ALJ limited the plaintiff to jobs that required him to understand, remember, and carry out *simple instructions*, and sustain concentration and persist at *simple tasks*, but the occupations that the vocational expert opined were suitable for the plaintiff required him to have the capacity to carry out *detailed* but uninvolved written or oral instructions, or have the understanding to carry out instructions furnished in written, oral or diagrammatic form.

Once an apparent conflict has been identified, the issue becomes whether the ALJ resolved the apparent conflict before ultimately concluding that the plaintiff was not disabled. The regulations place an affirmative duty on the ALJ to ask about any possible conflict between the vocational expert's evidence and the DOT, and to obtain an explanation for such conflict before relying on the expert's testimony to find that the plaintiff was not disabled. *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014). An ALJ is required to obtain an opinion from the vocational expert regarding whether there is a reasonable

explanation for an apparent conflict, and determine whether the expert's testimony was reliable notwithstanding the conflict. *Thomas*, 881 F.3d at 678.

The job requirement definitions in the DOT are generic maximums for each position, and as such, reliance on the DOT job requirement definitions as a definitive authority may be misplaced. *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). For example, all jobs included within a particular occupation category may not have requirements identical to, or as rigorous as, the identified generic maximum. *Id.* An expert may have learned from experience obtained from placing workers, from conversations with employers, or from other reliable publications, that a particular job's requirements are not as severe as listed in the DOT. *Welsh,* 765 F.3d at 930. But when the conflict is apparent, and not merely possible, the ALJ must do more than merely have the expert affirm that his or her testimony was consistent with the DOT. *Thomas,* 881 F.3d at 678.

Here, there is no evidence in the record that the ALJ did anything more than have the vocational expert affirm that his testimony was consistent with the DOT. It appears from the record that the ALJ, and perhaps the vocational expert, may have been unaware of the apparent conflict with the expert's testimony. The ALJ asked one, and only one question about the vocational expert's testimony.

> Q:    Mr. Shill, was your testimony today consistent with the information found in the DOT?
>
> A:    Yes, Your Honor, with the exception of being off task. That's based on 45 years of professional experience.

Filing 12-2 at 83.

15

Additionally, in the ALJ's written findings and conclusions, she states that she reviewed the relevant information contained in the DOT, and her review revealed no apparent conflict with the vocational expert's testimony. Filing 12-2 at 26. Thus, it appears that the ALJ was unaware that the occupations she found suitable were coded at reasoning levels that exceeded the reasoning level most appropriate for the plaintiff's residual functional capacity.

The administrative record reflects that the ALJ did not affirmatively inquire about the apparent conflict between the vocational expert's testimony and the DOT. As such, the ALJ did not obtain an opinion showing a reasonable explanation for the apparent conflict and that the expert's testimony was reliable notwithstanding the conflict. Based on the above, substantial evidence does not support the ALJ's determination that the plaintiff is not disabled. *See Stanton*, 899 F.3d at 558.

## III. CONCLUSION

The ALJ's denial of benefits is not supported by substantial evidence on the record as a whole. This matter is remanded for further proceedings consistent with this Memorandum and Order.

IT IS ORDERED:

1.   The plaintiff's motion for reversal of the Commissioner's final decision (filing 18) is granted.

2.   The Commissioner's motion to affirm the Commissioner's final decision (filing 20) is denied.

3.      The Commissioner's decision is reversed.

4.      This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Court's Memorandum and Order.

5.      A separate judgment will be entered.

Dated this 23rd day of July, 2020.

                                        BY THE COURT:

                                        _____
                                        John M. Gerrard
                                        Chief United States District Judge

17